# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH NORMAN,** § § § **Plaintiff,** § § **v.** § § **CANFOR SOUTHERN PINE, INC.** § § **Defendant.** § § | **CIVIL ACTION NO.:** **JURY DEMAND** |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff alleges that in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq., as amended, ("Title VII"), and the American with Disabilities Act, 42 U.S.C. 12101 et seq., as amended, ("ADA"), Defendant discriminated against him based on his race, color, and or disability. Plaintiff further alleges Defendant retaliated against him for seeking an accommodation under the Americans with Disabilities Act and interfered with his rights under the Family Medical Leave Act of 1991, 29 U.S.C. 2614, ("FMLA"), as amended. Plaintiff contends he is entitled to equitable relief and compensatory, liquidated, and punitive damages, attorney's fees, and costs.

### II. JURISDICTION

2. Plaintiff invokes the jurisdiction of this Court according to 28 U.S.C.

1

"1331, 1343(a)(4), 2201-2202, 42 U.S.C. §2000e et seq., 42 U.S.C. §1981, 42 U.S.C. § 12101, et seq., 29 U.S.C. 621 et seq., and 29 U.S.C. 2614.

### III.   PARTIES

3.   Plaintiff, Kenneth Norman, is a male citizen of the United States. Plaintiff has fulfilled all conditions precedent to this action's institution under the ADA, and Title VII.  Plaintiff has filed and or relied upon a timely charge of race, color, and disability discrimination with the EEOC.  The EEOC issued a right-to-sue letter to the Plaintiff on his charge of race, color, and disability discrimination. Plaintiff has filed this suit within 90 days of receipt of such right-to-sue letters.

4.   Defendant Canfor Southern Pine, Inc., (hereinafter "Canfor"), is an "employer" subject to suit as defined under Title VII, Section 1981, the ADA, and the FMLA.

### IV.   STATEMENT OF FACTS

5.   Plaintiff is an African American, formerly employed by the Defendant as a Millwright and Welder.

6.   Plaintiff was terminated on or about January 31, 2020.

7.   Plaintiff witnessed and experienced racial discrimination during his employment with the Defendant.

8.   The Defendant's Night Shift Supervisor, Jason Cato ("Cato"), regularly referred to Plaintiff or called him, "Boy" and "Bubba".  Cato did not call

his white co-workers "Boy" or "Bubba."

9. Not wanting to deal with multiple African Americans, Cato made Plaintiff's African American co-workers unofficially report to Plaintiff, including Timothy Hill, which is inconsistent with the Defendant's organizational structure. Cato did not make any white co-workers report to Plaintiff and all white co-workers reported directly to Cato.

10. Ultimately, Hill raised safety concerns associated with his assignment, Cato made him proceed with his work in an unsafe manner, and then Cato fired Hill for violating safety rules.

11. Once Plaintiff was the sole African American on the shift, Defendant assigned all night shift employees a "Partner," but it would not force the white workers to partner with an African American. As such, Plaintiff was the only night shift employee who did not receive a partner.

12. On or around the morning of January 21, 2020, Plaintiff experienced a medical issue requiring an emergency medical procedure. Plaintiff called Cato to inform him he could not work that day due to the procedure. Cato did not answer.

13. Plaintiff then called and informed Josh Newman ("Newman"), Defendant's acting Shift Supervisor at the time, he was going to miss work for the medical procedure.

14. Without the medical procedure, Plaintiff would likely experience

greater than three days incapacity due to the health condition.

15. With the medical procedure, Plaintiff missed three days of work and would miss additional time due to follow-up appointments and treatment.

16. Plaintiff needed to miss and missed at least three days of work related to the procedure. Newman and Plaintiff discussed his need and absences.

17. Newman assured Plaintiff he would inform the necessary individuals for attendance purposes.

18. Upon Plaintiff's return to work on or around the 24th of January, Plaintiff was approached by Adam Calhoun ("Calhoun"), a white Sawmill Supervisor. He told Plaintiff his doctor's excuse for the missing days would not suffice, and if Cato were present, he would need to speak with him about the matter.

19. Calhoun instructed Plaintiff to go to the office and sign paperwork, but there was no paperwork when he arrived. Calhoun then told Plaintiff to go home and he was not permitted to return for a few days later until he could speak with Yarot Castillo ("Castillo").

20. When Plaintiff returned to speak with him, Castillo told Plaintiff his excuse was valid, but he was being terminated for failing to follow the Defendant's call-in policy.

21. Plaintiff told Castillo he called Cato and Newman as referenced above and required under company policy.

22. Castillo told Plaintiff he would investigate and asked that Plaintiff call him the following day.

23. Castillo was not at work the following day, so Plaintiff called him the day after. Castillo informed Plaintiff the Defendant was moving forward with his termination.

24. In previous safety meetings and discussions with Cato, the Defendant informed employees they it disciplined on a graduated schedule, with a three-day suspension being issued before any termination.

25. Plaintiff observed white co-workers were provided the benefit of that progressive discipline policy, but he was not, and he did not receive the same graduated, scheduled three-day suspension before his termination that white Millwright and Welders enjoyed.

26. Further, Plaintiff was terminated for reporting his absences to those above him in the chain of command, while white Millwrights and Welders doing the same, such as Shawn (LNU), kept their jobs.

27. Defendant delay Plaintiff's hiring as a full-time employee in favor of the fulltime employment of white Millwrights and Welders causing him a loss or delay in compensation and benefits.

28. Defendant assigned Plaintiff lesser job assignments, it did not give him raises when his white coworkers were receiving the same, and he was paid a

lesser rate than his white co-workers.

## V.  CAUSES OF ACTION

### COUNT I:
### TITLE VII – VIOLATIONS OF THE CIVIL RIGHTS ACT
### (RACE AND OR COLOR-BASED DISCRIMINATION)

29. Plaintiff brings his discrimination claim based on race and or color under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §2000e et seq., the "Civil Rights Act of 1991".

30. In support of his claim, Plaintiff incorporates by reference Paragraphs 2-11, and 18-28, *supra*.

31. Plaintiff asserts Defendant's termination of his employment was substantially motivated due to his race, African American, and or color, Black.

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and provide him injunctive relief and declaratory relief, equitable relief, back-pay (plus interest), the value of lost benefits, punitive damages, attorneys' fees, costs, and expenses, as well as any other relief allowed or deemed just and proper by the Court.

### COUNT II:
### 42 U.S.C. §1981 – VIOLATIONS OF SECTION 1981
### (DISPARATE TREATMENT)

32. Plaintiff brings his disparate treatment claim based on race only under 42 U.S.C. § 1981, as amended, otherwise known as Section 1981.

33. In support of his disparate treatment claim under §1981, Plaintiff incorporates by reference Paragraphs 2-11 and 18-28, *supra*.

34. Plaintiff asserts Defendant subjected him to disparate terms and conditions of employment resulting in an adverse employment action against him, i.e., his termination.

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and provide him injunctive relief and declaratory relief, equitable relief, back-pay (plus interest), the value of lost benefits, punitive damages, attorneys' fees, costs, and expenses, as well as any other relief allowed or deemed just and proper by the Court.

### COUNT III:
### 42 U.S.C. 12101 et seq. – VIOLATION OF THE DISABILITIES ACT
### (DISABILITY-BASED DISCRIMINATION)

35. Plaintiff is an individual Defendant perceived as disabled, as defined under the ADA 42 U.S.C. §12102, after learning of his medical condition and medical procedure.

36. In support of his disability claim, Plaintiff incorporates by reference Paragraphs 2-4 and 12-23, *supra*.

37. Defendant terminated Plaintiff after learning of his medical condition and his potential limitations related to the same, one day after Castillo stated he investigate.

38. Defendant does not forgo its progressive discipline policy where attendance and Plaintiff's co-workers without a disability or perceived disability are concerned.

39. Defendant does not terminate Plaintiff's co-workers that possess no medical conditions or less serious medical conditions compared to Plaintiff, when they follow Defendant's call in procedure.

40. Defendant has intentionally, maliciously and with reckless indifference discriminated against Plaintiff based on his disability or his perceived disability with regards to his terms and conditions of employment. 42 U.S.C. §12112.

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and provide him injunctive relief and declaratory relief, equitable relief, back-pay (plus interest), the value of lost benefits, attorneys' fees, costs, and expenses, as well as any other relief allowed or deemed just and proper by the Court.

**COUNT IV:**
**29 U.S.C. 2614 – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (INTERFERRENCE WITH FMLA RIGHTS)**

41. Defendant employed Plaintiff for more than 12 continuous or non-continuous months.

42. Plaintiff worked at least 1,250 hours at Defendant's facility in the 12-month period preceding his need for FMLA leave.

43. Defendant employs more than 50 individuals at the facility where Plaintiff worked.

44. In support of his FMLA interference claim, Plaintiff incorporates by reference Paragraphs 2-4 and 12-23, *supra*.

45. Plaintiff possessed a known serious health condition.

46. Plaintiff experienced a medical issue and had an emergency medical procedure related to his serious health condition that left untreated would cause more than 3 days incapacitation.

47. Defendant knew or should have known Plaintiff was in need of leave protected under the FMLA.

48. Upon Plaintiff's return to work he was informed his "missed days" was not excusable.

49. Defendant did not count Plaintiff's absences as protected leave under the FMLA, terminated his employment based on those absences, interfering with Plaintiff's right to leave under the FMLA.

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and provide him back-pay (plus interest), the value of lost benefits, liquidated damages, attorneys' fees, costs, and expenses, as well as any other relief allowed or deemed just and proper by the Court.

Dated:  March 2, 2021

                                          Respectfully submitted,

                                          /s/ Robert Camp
                                          **ROBERT J. CAMP**

**OF COUNSEL**
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, LLC**
The Kress Building
301 19th Street North
Birmingham, AL  35203
Telephone: (205) 314-0500
Facsimile:  (205) 254-1500
E-mail: rcamp@wigginschilds.com

                  **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

                                          /s Robert Camp
                                          **ROBERT J. CAMP**

**PLAINTIFF  DEMAND  A  TRIAL  BY  STRUCK  JURY  ON  ALL ISSUES TRIABLE BY A JURY.**

Plaintiff requests this Honorable Court to serve via certified mail upon the Defendant the following: Summons, Complaint.

**Defendant's Address:**
Canfor Southern Pine, Inc.
C T Corporation System, Registered Agent
289 S Culver St, Lawrenceville, GA

                                          /s Robert Camp
                                          **ROBERT J. CAMP**